*565 O’Donnell, J.
{¶ 1} This case highlights the tension between an accused’s right to a fair trial and the interest of the judicial system in providing equal access to the courts, not just for some, but for all citizens, including those with impairment or disability. Although this court has promoted access to the judicial system, including the opportunity for those with disabilities to serve as jurors, the superior right of an accused to receive a fair trial requires that each member of a jury be able to perceive and evaluate all of the evidence presented. Because the accommodation made in this case was insufficient to enable the hearing-impaired juror to consider all of the relevant and material evidence presented to the jury, the accused did not receive a fair trial. Accordingly, the judgment of the court of appeals is affirmed, but the rule of law promulgated by the appellate court does not accurately set forth the applicable principle of law and is disapproved.
Facts and Procedural History
{¶ 2} The evidence presented at trial reveals that in August 2002, Scott A. Speer and Jim Barnett worked for Repair Products Unlimited, a company that manufactures vinyl repair kits. Speer, the factory supervisor, and Barnett not only had a working relationship, but the two were also close friends, often boating and travelling together.
{¶ 8} Nonetheless, Speer and Barnett occasionally had disagreements over money that Speer owed Barnett. On August 3, 2002, Speer had Barnett working on one of his boats at Bass Haven Marina. Ken Henning, who owned a mobile home at Bass Haven, heard Barnett complain that Speer owed him $10,000 for work he had performed and that Barnett would not leave Lake Erie without this money. According to Henning, Speer stormed off the boat. Henning heard the men continuing to argue in the early morning hours the next day.
{¶ 4} On the evening of August 5, 2002, after Speer and Barnett had spent the day working on one of Speer’s boats, they decided to travel to Put-in-Bay on South Bass Island. Although they had planned to spend the night on the island, Speer could not find a hotel room, and as a result, they decided to return to Bass Haven. Speer recognized that the winds and waves posed a concern, but he believed he could safely navigate the lake in his 24-foot small craft.
*566 {¶ 5} Returning from Put-in-Bay to East Harbor in the early morning hours of August 6, 2002, Speer encountered four- to six-foot waves. While standing in the boat and refusing to sit down, Barnett fell or was pushed from the boat near Mouse Island, just off Catawba Point. Speer called out to Barnett and spent about 20 minutes looking for him.
{¶ 6} Speer then called 9-1-1 from his cell phone and spoke to the Ottawa County Sheriffs Department and the Coast Guard. He reported that Barnett had fallen into the lake and that he had attempted to throw a line but had failed to reach Barnett. Speer also stated that he could not see Barnett and that his location was near the spot where Barnett had fallen. However, he said that he could not stay at that location due to the wave action against his craft, and he therefore returned to East Harbor. At that point, the call ended.
{¶ 7} The Coast Guard discontinued its search for Barnett. The next day, Speer, Roger Young (Barnett’s brother), and Terry Keen (the boyfriend of Barnett’s sister) took Speer’s boat to Mouse Island to search the shoreline. Young and Keen walked the island and discovered Barnett’s body washed up on the shore. Keen signaled to Speer on the boat and dialed 9-1-1 to advise the Coast Guard that they had located Barnett’s body.
{¶ 8} Samuel DeWalt, an area supervisor for the Ohio Department of Natural Resources, investigated the incident and filed a report with the Division of Watercraft on August 30, 2002, concluding that Speer’s alcohol use, speed, and reckless operation had contributed to Barnett’s death. Although DeWalt forwarded a copy of his report to the Ottawa County Prosecutor’s office, the state did not charge Speer.
{¶ 9} Testimony at trial revealed that in the summer of 2003, Speer allegedly admitted to William Seese, a friend with whom Speer had occasionally shared drugs, that he had pushed Barnett off the boat. Seese did not immediately report Speer’s statement to the local authorities. However, a member of Barnett’s family contacted DeWalt in June 2003, informing him that Seese might have information about the incident. Investigators did not locate Seese until July 2004, at which time he informed them of Speer’s admission.
{¶ 10} On March 1, 2006, the Ottawa County Grand Jury indicted Speer on counts of aggravated vehicular homicide and involuntary manslaughter. On February 27, 2007, a second grand jury returned a separate indictment on counts of aggravated murder and murder. The trial court consolidated the two cases for trial before a visiting judge.
{¶ 11} During voir dire, a venireman, Linda Leow-Johannsen, told the court that she suffered from a hearing impairment, explaining that she could hear voices but could not understand spoken words without reading the speaker’s lips. She admitted that she might miss information if the speaker did not face her and *567 that she would “have a problem” if counsel played an audio tape. Knowing that the state intended to present an audio recording during its case-in-chief, the court nonetheless denied Speer’s motion to excuse her for cause, stating that it would accommodate her impairment by permitting her to sit where she could see the faces of the witnesses and by telling her to advise the court if she missed anything. The court further arranged for her to read the court reporter’s real-time transcription of the audio tape.
{¶ 12} As part of its case-in-chief, the state played the audio tape recording of the 9-1-1 call for the jury; Leow-Johannsen read the court reporter’s real-time transcription of it as it played.
{¶ 13} During opening and closing arguments, the prosecutor urged jurors to consider the “calm tone” of Speer’s voice and his demeanor during the 9-1-1 call as evidence of his guilt. The state also emphasized that Speer had operated the boat recklessly by piloting it while under the influence of alcohol. In closing arguments, counsel for Speer denied the state’s contention that Speer had operated his craft under the influence of alcohol and pointed out that Speer did not slur his speech on the 9-1-1 tape.
{¶ 14} Following deliberations, the jury acquitted Speer of aggravated murder and murder, but found him guilty of aggravated vehicular homicide and involuntary manslaughter. The trial court determined the two convictions to be allied offenses of similar import and sentenced Speer only on the aggravated-vehicular-homicide conviction to a four-year term of incarceration.
{¶ 15} On appeal, the court of appeals reversed Speer’s convictions and held that the trial court had erred by not excusing the hearing-impaired juror for cause. The appellate court noted that “there is no way to determine whether [the juror] was aware of every time someone was speaking” and that “it is unknown whether the juror received all the testimony.” State v. Speer, 180 Ohio App.3d 230, 2008-Ohio-6947, 904 N.E.2d 956, ¶ 30. “[M]ore troubling” for the court, however, was the fact that the state had relied on the 9-1-1 tape to prove an element of the crime; jurors were asked to consider Speer’s speech patterns and other audio clues in evaluating that evidence, which would have been meaningful only if actually heard: “mere written words would not have conveyed the nuance and inflection imparted by the spoken words.” Id. at ¶ 33.
{¶ 16} The appellate court promulgated the following rule of law in its opinion: “If any doubt exists that a juror can adequately and completely perceive and evaluate all the evidence, whether because of a physical impairment, mental capabilities, or other reason that would interfere with the performance of a juror’s duties, the trial court must excuse that juror for cause.” Id. at ¶ 34.
{¶ 17} The state appealed to this court, contending that a trial court does not abuse its discretion by impaneling a hearing-impaired juror when the court *568 reasonably and in good faith believes that it can accommodate the juror’s disability. Moreover, it emphasizes that the Ohio Trial Court Jury Use and Management Standards set forth in the Rules of Superintendence provide that jury service should not be denied or limited on the basis of disability.
{¶ 18} Speer contends that the right of an accused to a fair trial outweighs the public interest in accommodating a juror with a disability to serve on a jury, and he further asserts that the trial court’s accommodation in this case did not enable her to evaluate all the evidence presented at trial.
{¶ 19} Accordingly, we are called on to weigh an accused’s right to a fair trial against the public interest in equal access of all persons to jury service, regardless of disability.
Public Access to Courts
{¶ 20} This court has led efforts to ensure that all persons, including the disabled, have access to the courts and the opportunity to serve on juries. The Rules of Superintendence for the Courts of Ohio promulgated by this court provide that “[t]he opportunity for jury service should not be denied or limited on the basis of * * * disability.” Id., Appendix B, Ohio Trial Court Jury Use and Management Standards, Standard 1(A). In promulgating this standard, this court recognized “the obligation of every court to reasonably accommodate the special needs of physically handicapped jurors.” Commentary to Standard 1. The duty of jury service falls on all citizens, and, therefore, it is “vitally important that the legal system open its doors to each person who desires to serve on a jury.” Id.
{¶ 21} Moreover, in 2003, this court established the Supreme Court of Ohio Interpreter Services Program, which works with courts on the issue of interpreters, parties and witnesses with limited English proficiency, and hearing-impaired individuals in the Ohio court system. The Interpreter Services Program has sponsored courses on American Sign Language and on understanding deafness, and it has also created and distributed a Handbook for Ohio Judges on Interpreters in the Judicial System and a bench card for judges on working with interpreters in the courtroom.
{¶ 22} With these and other initiatives, this court has demonstrated its commitment to ensure that no individuals are excluded from the courts on the basis of disability, whether as parties, witnesses, or jurors. But in every case, including those involving accommodations for jurors, the trial court must ensure that all jurors will be able to afford the accused a fair trial.
{¶ 23} In this case, the trial court accommodated Leow-Johannsen by placing her in the front of the jury box nearest the witnesses, by directing counsel, the parties, and witnesses to face her when they spoke so that she could read their *569 lips, and by allowing her to read the reporter’s transcript of the 9-1-1 tape when the state played it for the jury. The court thus attempted to comply with the Rules of Superintendence when it impaneled Leow-Johannsen and rejected Speer’s challenge for cause.
The Right to a Fair Trial
{¶ 24} Despite the efforts of the trial court to accommodate Leow-Johannsen, Speer did not receive a fair trial. Regrettably, the accommodation made by the trial court in this instance could not help Leow-Johannsen to effectively perceive or evaluate Speer’s demeanor, detect any slurred speech or the lack of it, or consider the loudness or softness of his voice, the patterns of his speech, his tone — whether excited, calm, or passive — or the inflections of the voices on the 9-1-1 tape.
{¶ 25} The right to a fair trial requires that all members of the jury have the ability to understand all of the evidence presented, to evaluate that evidence in a rational manner, to communicate effectively with other jurors during deliberations, and to comprehend the applicable legal principles as instructed by the court. An accommodation made to enable a physically impaired individual to serve as a juror must afford a fair trial to the accused. See generally United States v. Dempsey (C.A.10, 1987), 830 F.2d 1084, 1088-1089; Woodard v. Commonwealth (Ky.2004), 147 S.W.3d 63, 69; People v. Guzman (1990), 76 N.Y.2d 1, 6, 556 N.Y.S.2d 7, 555 N.E.2d 259.
{¶26} A hearing impairment by itself does not render a prospective juror incompetent to serve on a jury, but when the accommodation afforded by the court fails to enable the juror to perceive and evaluate the evidence, an accused cannot receive a fair trial. To avoid such situations, a trial court must determine whether reasonable accommodations will enable an impaired juror to perceive and evaluate all relevant and material evidence, and when no such accommodation exists, the court must excuse the juror for cause.
{¶27} Here, both the state and the defense relied on the 9-1-1 tape as evidence relevant to whether Speer had committed the charged offenses. The state suggested that Speer’s “calm tone” and his “demeanor on the 9-1-1 tape” provided evidence of his guilt. Speer’s defense counsel denied the state’s contention that Speer had operated his craft under the influence of alcohol by pointing out that the 9-1-1 tape did not show Speer slurring his speech at the time of the call. Leow-Johannsen’s hearing impairment directly affected her ability to perceive and evaluate that evidence because she only read the colloquy from a real-time transcription.
{¶ 28} Further, the accommodation made by the trial court in this case of allowing Leow-Johannsen to read the court reporter’s transcript did not provide *570 her any means to effectively discern the demeanor, speech patterns, voice inflections, or excitement or lack of it as reflected in the voice modulations or other audio clues on the 9-1-1 tape. Because she could not perceive whether there was urgency in Speer’s voice, whether he slurred his speech, or whether he sounded deceptive or hesitant, she could not include such evaluations in rendering her verdict.
{¶ 29} Therefore, the trial court abused its discretion in denying Speer’s challenge of her for cause. Her impairment directly prevented her from completely evaluating the specific evidence from the 9-1-1 recording presented in this case and relied on by both the state and the defense. Although promoting access to the courts is and should be a primary concern for the judiciary, the trial court’s paramount duty is to ensure that the accused is afforded a fair trial.
{¶ 30} Thus, the court of appeals correctly determined that the trial court abused its discretion in not excusing Leow-Johannsen and properly reversed the judgment of the trial court. However, the test the appellate court articulated for determining whether an impaired juror may serve on a jury is overbroad in that it focuses on whether “any doubt exists that a juror can adequately and completely perceive and evaluate all the evidence.” (Emphasis added.) We disapprove of this standard. Instead, in deciding a challenge for cause to a prospective juror on the basis of a physical impairment, the court must determine, in light of the specific evidence to be presented, whether any reasonable and effective accommodation can be made to enable the juror to serve. In making that determination, the court must balance the public interest in equal access to jury service against the right of the accused to a fair trial, the latter being the predominant concern of the court.
(¶ 31} In ruling on a challenge for cause to a hearing-impaired juror, a court must excuse the juror when it determines that no reasonable accommodation exists to enable the juror to perceive and evaluate all of the evidence directly bearing on the guilt of the accused. Accordingly, the judgment of the court of appeals is affirmed.
Judgment affirmed.
Moyer, C.J., and Pfeifer, Lundberg Stratton, and O’Connor, JJ., concur.
Lanzinger and Cupp, JJ., dissent.