[Cite as *State v. Smith*, 2012-Ohio-734.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

STATE OF OHIO　　　　　　　　　　:

　　　　　　　　　　　　　　　　　:　　Appellate Case No. 24402

　　　　Plaintiff-Appellee　　　　:

　　　　　　　　　　　　　　　　　:　　Trial Court Case No. 07-CR-4895

v.　　　　　　　　　　　　　　　　:

　　　　　　　　　　　　　　　　　:

THEODORE W. SMITH　　　　　　　:　　(Criminal Appeal from

　　　　　　　　　　　　　　　　　:　　 Common Pleas Court)

　　　　Defendant-Appellant　　　:

　　　　　　　　　　　　　　　　　:

　　　　　　　　　. . . . . . . . . . .

### O P I N I O N

Rendered on the 24th day of February, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. #0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
　　　　Attorney for Plaintiff-Appellee

J. DAVID TURNER, Atty. Reg. #0017456, Post Office Box 291771, Kettering, Ohio 45429-1771
　　　　Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1}　Defendant-appellant Theodore Smith appeals from his conviction and sentence for Kidnaping and Unlawful Restraint. His assigned counsel has filed a brief under the authority of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating that he could find no potential assignments of error having arguable merit. Smith

was accorded the opportunity to file, and did file, his own pro se brief. In that brief, he contends that his conviction and sentence must be reversed because the prosecutor improperly submitted evidence that a knife was used in the commission of the offenses and the trial court abused its discretion by permitting the introduction of this evidence. Smith also contends that the use of the knife evidence violated his constitutional right to be free from double jeopardy and that it created a "fatal variance" between the indictment and the evidence presented at trial. Finally, Smith contends that the three convictions involve allied offenses of similar import and that the trial court erred by failing to merge them for purposes of sentencing.

{¶ 2} We conclude that the potential assignments of error set forth by Smith have no arguable merit. Any error in failing to merge the convictions for purposes of sentencing is, at best, harmless error. We find no arguable error or abuse of discretion by reason of the introduction of evidence of the use of a knife during the commission of the offenses.

{¶ 3} We have performed our duty, under *Anders v. California*, to independently review the record. We have found no potential assignments of error having arguable merit.

{¶ 4} Accordingly, the judgment of the trial court is Affirmed.

I

{¶ 5} In November 2007, Cassie Davis approached an acquaintance in her apartment building, identified only as "Anthony," seeking to borrow money with which to purchase diapers for her toddler. Theodore Smith was with Anthony when Davis asked to borrow the money. Anthony got ten dollars from Smith and handed it to Davis in front of Smith.

{¶ 6} Approximately one week later, on November 27, Smith knocked on Davis's apartment door asking about Anthony's whereabouts. Davis did not know Smith's name, but

recognized him as the individual with Anthony when she borrowed the money. Davis indicated that Anthony had moved and she was not aware of his current residence. Before Smith left, he told Davis that if Anthony did not repay him the ten dollars given to Davis, he would seek the money from Davis.

{¶ 7} On the morning of November 28, Davis awoke to a person dragging her by the hair from her bed down the hallway to her apartment living room. She recognized the person as Smith.[1] Smith began demanding that Davis return his money. Davis's eighteen-month-old son began crying, and Smith ordered Davis to get the child and bring him into the living room. During the course of the next three hours, Smith kept Davis and the child in the living room. During this three-hour time period, Smith repeatedly demanded the repayment of his money. He made comments regarding a woman getting beaten for breaking out his car window and that he had "a bunch of friends who would love to bash [Davis's] head in." He further told her that he was going to "add interest" to the amount owed. Davis did not have any money in her apartment.

{¶ 8} Around noon, Davis glanced out of the window and observed her sister, who also lived in the building, walking to the bus stop to meet the sister's child getting off the school bus. Davis fabricated a story that she was employed at a local fast-food restaurant and that her paycheck should be ready for her. Smith directed her to get the check. Davis told him she would have to call to see if the check was ready, but that she did not have a telephone. Smith offered his cellular telephone, at which point Davis said she did not know the telephone number for the restaurant. She then told him that her sister lived downstairs and

---

[1] Although Davis recognized Smith, she did not know him by name prior to this incident.

that she could get a telephone directory book from the sister. Smith then grabbed a kitchen knife, brandished it in front of the child, and told Davis to get the book and the money and that he would keep Davis's child until she returned.

{¶ 9} Davis went to her sister's apartment and immediately made a call to 911. On the 911 tape Davis is distraught and indicates that a man in her apartment is going to "slit [her] throat" if she does not give him money. She also indicates that the man is holding her child captive. She indicated that she did not know the man's name. Davis then gave the telephone to her sister and returned to her apartment with a telephone directory. She then placed a call to a fast-food restaurant and inquired whether her check was ready. The employees of the restaurant hung up on her. Within a few moments, police entered the apartment and arrested Smith.

{¶ 10} Smith was indicted on one count of Kidnapping in violation of R.C. 2905.01(A)(3) – Count I; one count of Kidnaping to facilitate the offense of Aggravated Robbery in violation of R.C. 2905.01(A)(2) – Count II; one count of Aggravated Robbery with a Deadly Weapon in violation of R.C. 2913.01(K) and 2911.01(A)(1) – Count III; and one count of Kidnapping, Hold for Ransom of a Person Under the Age of Thirteen, in violation of R.C. 2905.01(A)(1) – Count IV. Following a jury trial, Smith was convicted on counts I and IV. He was found not guilty on Count II, but was convicted on the lesser-included offense of Unlawful Restraint. Finally, he was found not guilty on Count III. Davis did not appear for that trial.

{¶ 11} Smith appealed that conviction and sentence. This court reversed the conviction, holding that the State "failed to demonstrate that it had exerted reasonable efforts

to secure Davis's appearance at trial," and that the trial court therefore erred by permitting the introduction of her testimony taken during a prior parole hearing held regarding Smith. See, *State v. Smith*, 2d Dist. Montgomery No. 22926, 2010-Ohio-745. The matter was remanded for further proceedings. Id.

{¶ 12} On remand, Smith was re-tried on two Kidnaping and one Unlawful Restraint charges. Smith elected to represent himself at trial. Stand-by counsel was appointed. Smith was convicted on all three charges and was sentenced to prison terms of nine years on Count IV and six years on Count I, with the sentences to be served consecutively to each other, for a total of fifteen years. Smith was sentenced to 59 days on Count II, and was credited for time served, which exceeded 59 days. He was also classified as a "Tier 2 sex offender/child victim offender," with regard to Count IV.

{¶ 13} Smith appealed. His assigned counsel has filed a brief under the authority of *Anders v. California*, *supra*, reciting that he could find no potential assignments of error having arguable merit. By a decision and entry filed herein on May 25, 2011, we informed Smith that his counsel had filed an *Anders* brief and informed him of the significance of an *Anders* brief. We advised Smith of his right to file a pro se brief assigning any errors for review by this Court within sixty days of that order. Smith filed a motion seeking access to the trial transcript, docket journal entries and jury verdict forms. We sustained that motion, and Smith ultimately filed his own, pro se brief setting forth proposed assignments of error.

II

{¶ 14} Smith's Fifth Assignment of Error states:

"V. ALLIED OFFENSES OF SIMILAR IMPORT."

{¶ 15} Smith contends that the trial court erred by failing to merge all of the offenses for purposes of sentencing because "all of the offenses arose out of the same alleged criminal transaction," and are therefore allied offenses of similar import.

{¶ 16} A defendant may be found guilty of, and convicted of, multiple allied offenses of similar import so long as he is sentenced upon only one of them. In *State v. Johnson,* 128 Ohio St.3d 153, 2010–Ohio–6314, 942 N.E.2d 1061, the Ohio Supreme Court recently revised its allied-offense jurisprudence. The *Johnson* court stated that "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." Id. at syllabus.

{¶ 17} Under *Johnson,* "[w]e determine the General Assembly's intent by applying R.C. 2941.25, which expressly instructs courts to consider the offenses at issue in light of the defendant's conduct." Id. at ¶ 46. "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other." (Citation omitted.) Id. at ¶ 48. "If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." Id.

{¶ 18} "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' " Id. at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50. "If the answer to both questions is yes, then the

offenses are allied offenses of similar import and will be merged." *Johnson* at ¶ 50. "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R .C. 2941.25(B), the offenses will not merge." Id. at ¶ 51 (emphasis in original).

{¶ 19} We have recognized that separate convictions and sentences are permitted when a defendant's conduct results in multiple victims. *See, e.g.*, *State v. Skaggs,* 2d Dist. Clark App. No. 10–CA–26, 2010–Ohio–5390. As a result, it was permissible for Smith to be convicted and sentenced separately for the offenses he committed against each victim.

{¶ 20} R.C. 2905.01 proscribes the offense of Kidnapping. That statute provides:

(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

(1) To hold for ransom, or as a shield or hostage;

\* \* \*

(3) To terrorize, or to inflict serious physical harm on the victim or another.

{¶ 21} The mens rea for R.C. 2905.01 offenses is "purposefully," which is defined by R.C. 2901.22(A) as follows:

{¶ 22} "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to

engage in conduct of that nature."

{¶ 23} Unlawful Restraint is defined in R.C. 2905.03, which states that "no person without privilege to do so, shall knowingly restrain another of the other person's liberty." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 24} In this case, Smith's conduct was directed at two separate victims. Smith dragged Davis from her bedroom to her living room. Then he ordered her to retrieve her child from the bedroom. He next forced Davis to leave the apartment while he retained custody of the child while brandishing a knife. Then, after Davis returned to the apartment, he continued to restrain her and the child until the police arrived. All of these actions were committed over the course of approximately three hours, during which time he threatened Davis and the child with harm.

{¶ 25} The act of dragging Davis from one room to another and holding her while threatening her over the course of three hours satisfies the elements of R.C. 2905.01(A)(3). Likewise, Smith's act of retaining the child while Davis was forced to leave the apartment satisfies the elements of R.C. 2905.01(A)(1). Since this conduct involves two separate victims, we conclude that the two Kidnapping convictions do not constitute allied offenses of similar import. In reaching this conclusion, we find no arguable merit to the contrary proposition.

{¶ 26} Smith was also convicted of Unlawful Restraint with regard to Davis. However

with regard to that conviction he was sentenced to time served. Therefore, even if the trial court should have merged the Unlawful Restraint sentence with the Kidnapping sentence pertaining to Davis, the actual prison sentence for that offense – time served – has by definition already been served. Therefore, we cannot provide Smith any meaningful relief as to that sentence, and this issue is therefore moot.

{¶ 27} Smith's Fifth Assignment of Error has no arguable merit.

III

{¶ 28} Smith's First, Second, Third and Fourth Assignments of Error are as follows:

I. FATAL VARIANCE BETWEEN INDICTMENT AND EVIDENCE AT TRIAL.

II. MULTIPLE PROSECUTION SAME EVIDENCE.

III. PROSECUTORIAL MISCONDUCT.

IV. TRIAL COURT'S ABUSE OF DISCRETION.

{¶ 29} All four of these arguments are based upon the fact that the State presented evidence that Smith utilized a knife during the commission of these offenses. Smith contends that the prosecutor acted improperly in presenting the evidence of the knife and that the trial court abused its discretion by permitting the introduction of this evidence. He further contends that permitting the introduction of the evidence concerning the knife subjected him to double jeopardy in violation of his constitutional rights and created a fatal variance between the indictment and the evidence presented at trial. Smith's arguments are premised upon the fact that he was acquitted, during his first trial, of the charge of Aggravated Robbery with a Deadly Weapon. He claims that the State was therefore precluded from introducing any

evidence of the knife at his second trial.

{¶ 30} In criminal prosecutions, a variance is a conflict or disagreement between the indictment and the proof in a matter essential to the charge. *State v. Brozich*, 108 Ohio St. 559, 141 N.E. 491 (1923), paragraph one of the syllabus. The evidence demonstrates that Smith used a knife during the commission of the crime. It was relevant to the issue of purpose and restraint. Crim.R. 33(E)(2) provides that no conviction shall be reversed because of "[a] variance between the allegations and the proof thereof, unless the defendant is misled or prejudiced thereby." The determination of whether a variance is prejudicial must be made on the facts of each case. *United States v. Mills*, 366 F.2d 512, 514 (6th Cir. 1966).

{¶ 31} We note that the indictments for the charges that were re-tried following remand did not contain information or language about a knife. The charge for Aggravated Robbery with a Deadly Weapon was the only portion of the indictment that mentioned a knife.

{¶ 32} In this case, the knife was not essential to prove the element of the offenses charged. It was merely evidence regarding the course of the events in question. The record shows that Davis, on the 911 tape, stated that Smith was going to "slit her throat." There is also evidence, from Davis's testimony, that Smith brandished a knife in front of her child when he sent Davis out of the apartment. While this evidence was relevant to demonstrate that Smith acted purposefully in holding the child hostage, proof specifically that a knife was used was not essential to prove the elements of the Kidnapping statute. Indeed, the mere fact that Smith kept the child under his control, regardless of whether he utilized a knife in doing so, allowed the jury to infer the element of purpose. Thus, we conclude that Smith was not

prejudiced or misled by the introduction of the knife into evidence. Indeed, it is clear from the record that Smith was aware prior to trial that the State intended to utilize the knife as evidence.

{¶ 33} We also conclude that Smith was not subjected to double jeopardy by the use of the knife evidence. Again, it was merely evidence regarding the course of the events. Smith was not re-tried on the charge of Aggravated Robbery with a Deadly Weapon. There was no additional charge or punishment that depended on proof that a knife was used in the commission of the offense.

{¶ 34} We turn to the claim that the prosecutor acted improperly by attempting to submit the evidence that a knife was used during the commission of the instant offenses and whether the trial court abused its discretion by allowing the knife into evidence. "The test for prosecutorial misconduct is whether [actions] were improper and, if so, whether they prejudicially affected substantial rights of the accused. The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.' " (Citation omitted.) *State v. Jones,* 90 Ohio St.3d 403, 420, 2000-Ohio-187, 739 N.E.2d 300, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed. 2d 78 (1982). Our review of the record fails to disclose prosecutorial misconduct. Furthermore, the trial was not unfair. Finally, "[t]he admission of evidence is within the discretion of the trial court. * * * [T]hus the court's decision will be reversed only upon a showing of an abuse of discretion." (Citations omitted.) *Banford v. Aldrich Chem. Co., Inc.,* 126 Ohio St.3d 210, 2010–Ohio–2470, 932 N.E.2d 313, ¶ 38. We find no abuse of discretion. The evidence demonstrates that Smith used a knife during the commission of the crime. It was relevant to the issues of purpose, force and threat.

{¶ 35} In reaching these conclusions, we find no arguable merit to their contrary propositions.

{¶ 36} Smith's First, Second, Third and Fourth Assignments of Error have no arguable merit.

IV

{¶ 37} In the performance of our duty, under *Anders v. California,* having conducted an independent review of the record, we find no potential assignments of error having arguable merit. The trial court went out of its way to ensure a fair trial, especially given that Smith elected to represent himself. The hearing regarding Smith's ability to represent himself was complete, and there is nothing in this record to indicate that Smith was unable to assume responsibility for his decision to act as his own counsel. Any errors made during trial were in Smith's favor, the trial court evincing an intent to make sure that the State did not take advantage of Smith's pro se status. Furthermore, Smith availed himself of aid from stand-by counsel at points throughout the trial.

{¶ 38} We conclude this appeal is wholly frivolous. The judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

GRADY, P.J., and FROELICH, J., concur.

Copies mailed to:

Mathias H. Heck
Carley J. Ingram
J. David Turner
Theodore W. Smith
Hon. Frances E. McGee