[Cite as *State v. Smith*, 2013-Ohio-1586.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24402 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 07-CR-4895 |
| v. | : | |
| | : | |
| THEODORE W. SMITH | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of April, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. #0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

STEPHEN P. HARDWICK, Atty. Reg. #0062932, Office of the Ohio Public Defender, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, P.J.

{¶ 1} Defendant-appellant Theodore W. Smith appeals from his conviction and

sentence for two counts of Kidnapping and one count of Unlawful Restraint. Among other assignments of error, Smith contends that the trial court erred by sustaining the State's challenge of one prospective juror for cause, over his objection. We conclude that the trial court did err by sustaining the challenge for cause.

{¶ 2}     The judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.

## I.  Smith's Original Trial and Appeal

{¶ 3}     Smith was originally convicted on two counts of Kidnapping and one count of Unlawful Restraint. We reversed his conviction and sentence upon the ground that there had been a violation of his constitutional right to confront one of the witnesses against him. *State v. Smith*, 2d Dist. Montgomery No. 22926, 2010-Ohio-745.

## II.  Smith's Second Trial

{¶ 4}     By his own choice, Smith proceeded pro se at trial, although a standby attorney was designated to provide him assistance if required.

{¶ 5}     The trial court conducted an extensive voir dire of the prospective jurors before turning voir dire over to counsel. After the trial court had elicited from prospective jurors their previous experiences on civil and criminal juries, the trial court endeavored to explain the difference in the standards of proof applicable to civil and criminal trials:

THE COURT: All right. For those of you who have served on civil trials, you

need to understand that the standard of proof that is used is different than what will be

used here in a criminal case.   The standard of proof in a civil case would be clear and convincing or by – shoot, I forgot the other standard.   But it's a lesser standard. Understand that the – I said shoot – Ms. Cheryl looked at me –

THE CLERK: The other standard is preponderance.

THE COURT: Preponderance.   Thank you.   My mind is just working really – so that is a lower standard than the standard you're going to be asked to look at in a criminal case.   The standard in a criminal case is beyond a reasonable doubt.   That means, not beyond a shadow of a doubt, not beyond any doubt, but using your reason and common sense.   You are firmly convince [sic] of the truth of the charge.

{¶ 6}   Note that because the trial court was temporarily unable to recall the term "preponderance," it wound up being uttered not as part of the phrase "preponderance of the evidence," but just by itself as a standard of proof.

{¶ 7}   Just three transcript pages later, there was a colloquy between the trial court and prospective juror no. 11:

THE COURT: * * * .

Is there anyone here who thinks that they can't put aside that use of the computer to help or assist themselves in making a decision in this case?

PROSPECTIVE JURORS: No.

THE COURT: All right.   So everyone has –

PROSPECTIVE JURORS [sic]: Your Honor.

THE COURT: Yes, ma'am.

PROSPECTIVE JUROR NO. 011: I have – I am not – I am an immigrant.   I

have been in this country since 1969, but I still do have some problem with some words, especially with law words that I am not familiar with.

THE COURT: Okay. And tell me how to pronounce your name, ma'am.

PROSPECTIVE JUROR NO. 011: [Pronounces name].

THE COURT: [Struggling with pronunciation] –

PROSPECTIVE JUROR NO. 011: [Re-pronounces name].

THE COURT: [Juror's name]. Thank you, Ms. [juror's name]. If I tell the – and you've put us on notice – that it is up to the lawyers, in this case, to make sure that they breakdown [sic] words. At this point have [you][1] not understood anything that I have said thus far?

PROSPECTIVE JUROR NO. 011: I understood. I just –

THE COURT: Okay. So if I put –

PROSPECTIVE JUROR NO. 011: There is one word that she – that you couldn't remember and she told you. That I did not know.

THE COURT: Uh, okay. She told you – what Ms. Howard told me was, the word [sic] "preponderance of the evidence."

PROSPECTIVE JUROR NO. 011: Right. That – I did not understand.

THE COURT: [Explains preponderance of the evidence, as contrasted with beyond a reasonable doubt.]

Do you understand that, ma'am?

---

[1] The word "you" is clearly discernable from the audiovisual recording of the trial.

PROSPECTIVE JUROR NO. 011: Yes, ma'am.

THE COURT: And at this point, do you think you'd be able to proceed, if we make sure that we give definition to all of our legal – everybody is on notice, you need to make sure that Mrs. [juror's name] –

PROSPECTIVE JUROR NO. 011: [Juror's name].

THE COURT: [Juror's name] – that Ms. [name] is able to understand and to know the story of the case. Do you understand that, attorneys?

MS. SCHENCK [representing the State]: Yes, Your Honor.

MR. SMITH [the defendant]: Yes, ma'am.

{¶ 8} Nineteen transcript pages later, as the trial court was exploring relationships of prospective jurors with police officers, the following colloquy occurred:

THE COURT: Okay. Thank you very much.

Anyone else? Yes, ma'am. That would be –

PROSPECTIVE JUROR NO. 011: [Pronounces name]. I have a neighbor, across the street, is a police officer in Montgomery.

THE COURT: Okay.

PROSPECTIVE JUROR NO. 011: We are not that close.

THE COURT: So he's a Vandalia police officer, you're not that close to him. So it wouldn't affect your ability to be fair and impartial?

PROSPECTIVE JUROR NO. 011: No.

THE COURT: Thank you very much.

{¶ 9} There were no other colloquies during voir dire in which prospective juror no.

11 participated.

{¶ 10}  Prospective juror no. 11 was excused for cause:

MS. SCHENCK: Your Honor, the state would actually ask for a joint motion for cause for [prospective juror no. 11].  I know that she indicated that she would let us know if she didn't know certain words, but I think it's in everybody's best interest that we have somebody with a really good command of the English language.  So I would ask for a joint motion for cause, because I don't think she's good for anybody.

THE COURT: Any objection, Mr. Smith?

MR. SMITH: I'd like to keep her, if I could.  I don't want any joint motion with the prosecution.

MS. SCHENCK: Okay.  Well, then I will make a sole motion for cause, Your Honor.  I believe it's going to create difficulty if she doesn't understand things, how she would interrupt a trial to ask questions of what certain words meant.  So I renew my challenge for cause.

MR. SMITH: I believe that [prospective juror no. 11], though she may not have a command over every word in the English language, I do believe that what she brings to the jury will be pause and certainty.  She will require, at certain points, that certain things be clarified, that potentially may be clarified – need to be clarified for all of the jurors, not just for her.  So I would object to [prospective juror no. 11] be [sic] dismissed for cause.

THE COURT: Court's going to sustain the motion based on Ohio revised code § 2945.25, dealing with causes of challenging jurors, subsection (n).  It states, "A

person called as a juror in a criminal case may be challenged for the following causes: (n) that English is not [his] native language, and that his knowledge of English is insufficient for him to permit him to understand the facts and law in this case."

Evidence revealed that [prospective juror no. 11] is not – she stated that she was an immigrant, so English was not her native language. She did speak in a thick accent. And she did acknowledge that she did not understand all of the law the [sic] we had. Court will order that [prospective juror no. 11] be challenged or will be removed for cause.

{¶ 11} The trial proceeded to a conclusion, and the jury found Smith guilty of both counts of Kidnapping and the one count of Unlawful Restraint. Smith was sentenced to a total of fifteen years in prison, and was classified as a "Tier 2 sex offender/child victim offender." The trial court disapproved Smith for transitional control. Although the trial court had not imposed court costs during the sentencing hearing, the original sentencing entry ordered him to pay costs. Subsequently, the trial court amended its entry to include a waiver of fines and costs.

{¶ 12} From his conviction and sentence, Smith appealed. His original appellate counsel filed a brief under the authority of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating that no potential assignments of error having arguable merit could be found. We affirmed. *State v. Smith*, 2d Dist. Montgomery No. 24402, 2012-Ohio-734.

{¶ 13} Smith's present counsel then moved to re-open his appeal, under App. R. 26(B), contending that his prior appellate counsel was ineffective for having failed to raise

certain assignments of error having potential merit.   We agreed, and re-opened this appeal.

### III.   The Trial Court Erred in Excusing

### Prospective Juror No. 11 for Cause

{¶ 14}   Smith's First Assignment of Error is as follows:

THE TRIAL COURT ABUSED ITS DISCRETION BY EXCUSING A JUROR FOR CAUSE, OVER AN OBJECTION, SOLELY BECAUSE THAT JUROR SPOKE WITH A "THICK ACCENT" AND UNDERSTOOD ONE LEGAL TERM OF ART ONLY AFTER THE JUDGE EXPLAINED IT TO HER.   SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.   R.C. 2945.25(N).

{¶ 15}   The State contends that any error here was harmless, because it could simply have exercised a peremptory challenge to have excused prospective juror no. 11 from the jury.  But the State used all four of its peremptory challenges after prospective juror no. 11 was excused for cause.   Thus, if we were to treat an erroneous removal of prospective juror no. 11 from the jury as having been, in effect, a peremptory challenge by the State, the result would be to afford the State one more peremptory challenge than Smith was allowed to exercise, thereby giving it a disproportionate influence over the composition of the jury.

{¶ 16}   The parties agree that the issue of a challenge to a prospective juror for cause is confided to the discretion of the trial court.   Here, the trial court based its decision to sustain the challenge for cause based upon R.C. 2945.25(N), which provides, as a cause for excusing a prospective juror: "That English is not his native language, and his knowledge of

English is insufficient to permit him to understand the facts and law in the case[.]"

{¶ 17}  The record supports the trial court's finding that English was not prospective juror no. 11's native language.  She is an immigrant, having come to this country 43 years before the trial, and her name is difficult for an English speaker to pronounce.

{¶ 18}  The trial court also noted that prospective juror no. 11 spoke with a "thick" accent.  There is an audiovisual record of the trial proceedings, and we have listened to those parts of the record involving this juror.  She has a recognizable accent, although not one to which we would attach the (admittedly subjective) adjective "thick."  We had no difficulty understanding every word she uttered.  Nevertheless, the record permits a finding that English was not her native language.

{¶ 19}  We find no basis in the record for the trial court's finding that prospective juror no. 11's knowledge of English was insufficient to permit her to understand the facts and law in the case.  After 23 transcript pages of preliminary instructions and voir dire conducted by the trial court, prospective juror no. 11 told the trial judge that the only word she had not understood up to that point was the word "preponderance," not used in the phrase "preponderance of the evidence," but used by itself as one of two possible standards of proof in a civil trial.  When the trial court then explained the concept of "preponderance of the evidence," prospective juror no. 11 said that she understood it, with no hesitation or apparent uncertainty.  There is no other indication in this record that this prospective juror's knowledge of English was insufficient to permit her to understand the facts and law of the case.

{¶ 20}  In reaching the conclusion that the record does not support the trial court's

finding, we emphasize that we have listened to the audiovisual recording of the colloquies involving prospective juror no. 11. The audiovisual recording does not show the jurors or prospective jurors, so, unlike the trial court, we are not able to take into account prospective juror no. 11's facial expression or gestures in evaluating her understanding of spoken English. The trial court did not indicate that its finding was based upon its visual observations of the prospective juror.

{¶ 21} We conclude that the trial court erred in excusing prospective juror no. 11 from the jury over Smith's objection.

{¶ 22} In *State v. Sanders*, 92 Ohio St.3d 245, 249, 750 N.E.2d 90 (2001), the Supreme Court of Ohio held that: "[A]n erroneous excusal for cause, on grounds other than the venireman's views on capital punishment, is not cognizable error, since a party has no right to have any particular person sit on the jury. Unlike the erroneous denial of a challenge for cause, an erroneous excusal cannot cause the seating of a biased juror and therefore does not taint the jury's impartiality."

{¶ 23} We are troubled by this holding. We recognize that a trial court must have substantial discretion in ruling upon challenges for cause – precisely because it is there to see and hear the prospective juror, while we are not. But completely immunizing from appellate review decisions to excuse prospective jurors for cause may lead to substantial injustice. As a result, a trial judge may, with impunity, follow a practice of routinely allowing the State (or one party in civil litigation) to exclude jurors for cause without any basis in the record, while requiring a strict basis in the record for the other party's challenges for cause. This would have the effect of allowing unlimited peremptory challenges by one party, but not by the other,

thereby allowing the preferred party a greater opportunity to choose the jury.[2]

{¶ 24}  Nevertheless, *State v. Sanders* is a decision of the Supreme Court of Ohio, and we are bound to follow its holding unless that holding is fairly distinguishable.  We conclude that its holding is fairly distinguishable.

{¶ 25}  In *Sanders*, the prospective juror was excused "because she stated on voir dire that she could not do without a cigarette for any length of time."  *Id.*  The Supreme Court analyzed the issue solely in terms of the criminal defendant's rights, concluding that because "a party has no right to have any particular person sit on the jury," the alleged error in excusing the prospective juror was not cognizable error.  *Id.*

{¶ 26}  In the case before us, the erroneous exclusion of prospective juror no. 11 implicates the right of the prospective juror to the equal protection of the law, under the Equal Protection clause of the Fourteenth Amendment to the United States Constitution, not just the rights of Smith, the defendant.  The Equal Protection clause is implicated whenever state action is predicated upon race, alienage, *or national origin.  City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).  That is because: "These factors are so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy – a view that those in the burdened class are not as worthy or deserving as others."  *Id.*[3]

---

[2] We do not suggest that this is what occurred in this case.   Although we conclude that the trial court erred in making the finding of cause in this case, we are convinced that the trial court was sincere in making the finding.

[3]  This is not to say, of course, that a prospective juror can never be excluded from serving on the jury because of a lack of sufficient

**{¶ 27}** Ohio recognizes that: "The opportunity for jury service should not be denied or limited on the basis of race, *national origin*, gender, age, religious belief, income, occupation, disability, or any other factor that discriminates against a cognizable group in the jurisdiction." Rules of Superintendence, Appendix B, Trial Court Jury Use and Management Standards 1(A) (emphasis added), quoted approvingly in *State v. Speer*, 124 Ohio St.3d 564, 2010-Ohio-649, 925 N.E.2d 584, ¶ 20.

**{¶ 28}** "[A] defendant in a criminal case can raise the third-party equal protection claims of jurors excluded by the prosecution because of their race." *Powers v. Ohio*, 499 U.S. 400, 415, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). That case involved a white criminal defendant's objection to the State's use of peremptory challenges to remove black potential jurors from the jury. The case involved discrimination based on race, rather than discrimination based on national origin. Also, it involved peremptory challenges, rather than challenges for cause erroneously sustained over objection. Nevertheless, the essential principle upheld in *Powers v. Ohio* is that a criminal defendant has standing to vindicate the right of the prospective juror not to be discriminated against.

**{¶ 29}** In the case before us, the erroneous exclusion of prospective juror no. 11 from the jury, a result of her national origin, violated her right not to be denied the opportunity for jury service, an important attribute of citizenship, on the basis of her national origin. Smith has standing, vicariously, to vindicate that right.

**{¶ 30}** Thus, the case before us is distinguishable from *State v. Sanders, supra*, in

---

familiarity with the English language. Ohio has a legitimate state interest in ensuring that jurors have sufficient familiarity with the English language to follow the proceedings. The provision of an interpreter for each juror who is not fluent in English would be impracticable.

which only the rights of the criminal defendant were at issue. The rights of the criminal defendant in *Sanders* were not violated, because he had no right to have any particular person seated on the jury, so the erroneous exclusion of a juror for cause did not prejudice his rights. By contrast, in the case before us, the right of the prospective juror, herself, is implicated. Her erroneous exclusion from the jury for cause does prejudice her right to be able to serve on a jury.

{¶ 31}  Smith's First Assignment of Error is sustained.


**IV.  Because There Is No Evidence in the Record that**

**Smith Committed Either Kidnapping with a Sexual Motivation,**

**the Trial Court Erred in Classifying him as a Tier II Child Victim Offender**

{¶ 32}  Smith's Second and Third assignments of error are as follows:

THE TRIAL COURT ERRED BY FINDING MR. SMITH A "TIER 2 SEX OFFENDER/CHILD VICTIM OFFENDER" EVEN THOUGH S.B. 10 DOES NOT APPLY TO OFFENSES COMMITTED BEFORE JANUARY 1, 2008.

THE TRIAL COURT ERRED BY FINDING MR. SMITH A "TIER 2 SEX OFFENDER/CHILD VICTIM OFFENDER" EVEN THOUGH HE DID NOT COMMIT A SEXUALLY ORIENTED OFFENSE.

{¶ 33}  The State acknowledges that R.C. 2950.01(F), as in effect at the time that Smith committed his offenses, provided that a Tier II sex offender/child-victim offender means a sex offender who has been convicted of certain defined sexual offenses, which include the Kidnapping offenses of which Smith was convicted, "when the offense is

committed with a sexual motivation." The State concedes that there is no evidence in the record that Smith committed either Kidnapping offense with a sexual motivation.

{¶ 34}   The State therefore concedes that Smith's Third Assignment of Error has merit, and entitles him to a reversal and vacation of his designation as a Tier II child victim offender.   We accept the State's concession, sustain Smith's Third Assignment of Error, and overrule his Second Assignment of Error as moot.

## V.   Court Costs

{¶ 35}   Smith's Fourth Assignment of Error is as follows:

THE TRIAL COURT ERRED BY IMPOSING COURT COSTS IN THE ENTRY WITHOUT IMPOSING THEM AT THE SENTENCING HEARING.

{¶ 36}   The State responds to this assignment of error by pointing out that although the trial court imposed court costs in its initial judgment entry, it amended its entry, before this appeal was filed, to include a waiver of court costs and fines.   The State contends that this assignment of error is not demonstrated in the record, and should be overruled.

{¶ 37}   We are not convinced that the trial court had authority to amend its judgment entry, since that was a judgment or final order subject to appeal, even if no appeal had yet been filed.   Therefore, we sustain Smith's Fourth Assignment of Error.

## VI.   Transitional Control

{¶ 38}   Smith's Fifth Assignment of Error concerned the trial court's disapproval of transitional control.   In his reply brief, his counsel indicates that he has been persuaded by the

State's answer brief on this subject, and formally withdraws Smith's Fifth Assignment of Error.   Therefore, we will not consider it.

## VII.   Conclusion

**{¶ 39}**    Smith's First Assignment of Error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

DONOVAN, J., concurs.

WELBAUM, J., dissenting:

**{¶ 40}** I very respectfully dissent from the majority's decision to sustain Smith's First Assignment of Error.   It is my opinion that the trial court did not abuse its discretion in excusing Prospective Juror 011 for cause under R.C. 2945.25(N) or Crim.R. 24(C)(13).

**{¶ 41}**    The prospective juror expressed concern to the trial judge that she had some problems understanding some words, especially legal terminology with which she was not familiar. She stated:

> I have– I am not– I am an immigrant. I have been in this country since 1969, but I still have some problem with some words, especially with law words that I am not familiar with.   Trial Transcript p. 79.

**{¶ 42}**    The prospective juror is the most knowledgeable person in the courtroom as to her own fluency level.   Representations of the juror as to his or her fluency level are the primary source of information relied upon. *State v. Oliver*, 11th Dist. Portage No.

2010-P-0017, 2012-Ohio-122, ¶ 70-76; *State v. Frazier*, 9th Dist. Summit No. 25654, 2012-Ohio-790, ¶ 26-29. Although in *Oliver* and *Frazier* there was more evidence of lack of fluency than we see here, it consisted of representations of the prospective jurors. These courts relied heavily upon the representations of the prospective jurors in ascertaining their fluency levels as the trial court did in this case.

**{¶ 43}** Unlike a reviewing court, the trial court has the benefit of not only hearing, but actually seeing and interacting with the prospective juror. It is the trial court's exclusive responsibility to exercise broad discretion, giving such weight to the prospective juror's representations concerning the level of her fluency as it finds credible and to consider this in light of her apparent understanding of the brief conversations on the record. The prospective juror's credibility is supported by the record in certain respects such as accent and name. To dismiss the prospective juror's concerns about her own fluency solely upon the brief conversations which occurred in the trial setting would have also been debatable and potentially prejudicial to Smith's rights.

**{¶ 44}** I do not believe the trial court's ruling is arbitrary, unreasonable, or unconscionable. I find no abuse of discretion and would overrule Smith's First Assignment of Error. I very respectfully dissent.

. . . . . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Michele D. Phipps
Stephen P. Hardwick
Hon. Frances E. McGee