[Cite as *In re Z.H.*, 2013-Ohio-3904.]

STATE OF OHIO        )                    IN THE COURT OF APPEALS
                            )ss:               NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

IN RE: Z.H.

C.A. No.     26844

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 11-8-556

DECISION AND JOURNAL ENTRY

Dated: September 11, 2013

CARR, Judge.

{¶1} Appellant, Norman J. ("Father"), appeals from a decision of the Summit County Court of Common Pleas, Juvenile Division. This Court reverses and remands for further proceedings in accordance with this opinion.

I.

{¶2} On July 28, 2011, Z.H. was born to September H. ("Mother"). No father was listed on the child's birth certificate. Less than three weeks later, on August 17, 2011, while Mother was in a Walmart store with her child and two male companions, police took custody of Z.H. under the authority of Juv.R. 6. The basis for the removal was that police suspected Mother and her two male companions of purchasing drug-making supplies.

{¶3} The police contacted Summit County Children Services Board ("CSB"), and the agency filed a complaint alleging abuse, neglect, and dependency in juvenile court the next day. Mother initially stated that she preferred not to reveal the father, but she eventually and

reluctantly named "Aaron Taylor" as the biological father. Service of notice that a complaint had been filed and that an adjudicatory hearing was set for September 30, 2011 was attempted on both "Aaron Taylor" and John Doe by posting. *See* Juv.R. 16(A).

{¶4}　On the date scheduled for adjudication, one Aaron Taylor appeared, but all parties agreed that he was the wrong Aaron Taylor and he was dismissed from the proceedings. The adjudicatory hearing was continued until November 10, 2011, in an effort to perfect service on the correct individual. No one claiming to be the father of Z.H. appeared at the continued adjudication either. That hearing proceeded nonetheless and resulted in an ostensible finding that the child was abused and dependent, and the matter then continued directly to disposition in which the court placed the child in the temporary custody of the agency.

{¶5}　Two months later, another "Aaron Taylor" was located in a local prison and genetic testing was ordered by the juvenile court. When testing established that this Aaron Taylor was also not the biological father of Z.H., he, too, was removed as a party.

{¶6}　Because the child's father had not been located and Mother was making no efforts on her case plan whatsoever, CSB moved for permanent custody of the child on July 10, 2012. The matter proceeded to a hearing in the absence of either parent. Two days after the permanent custody hearing, Mother named Norman J. as the biological father of the child and stated that he was in jail. The CSB caseworker visited Norman J. in jail and reported that he conceded, upon hearing Mother's name, that he could be the father and would like to pursue custody if he is determined to be the child's biological father.

{¶7}　In the interim, the trial court granted permanent custody to the agency. In ensuing actions, genetic testing of Norman J. was ordered, he was determined to be the child's biological father, and the permanent custody decision was stayed. At the next status hearing, the trial judge

vacated the permanent custody order and appointed counsel for Father. CSB reported that paternal relatives had been located and were found to be an appropriate placement for the child. Father was added to the case plan. Within days, Father moved to dismiss the case under Civ.R. 60(B)(5) or a common law motion to vacate on the grounds of defective service and a resultant lack of personal jurisdiction. CSB opposed and the trial court denied Father's motion. Father appeals from that judgment and assigns two errors for review.

II.

## **ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING FATHER'S MOTION TO DISMISS THE COMPLAINT FOR FAILING TO PERFECT SERVICE.

{¶8} Father asserts that the trial court erred in denying his motion to dismiss or to vacate the case on the grounds that the original service of process was defective and that, therefore, the trial court never obtained personal jurisdiction over him.

{¶9} Before addressing the merits of Father's first assignment of error, however, this Court must consider whether the denial of his motion is a final appealable order. Article IV, Section 3(B)(2) of the Ohio Constitution limits this Court's appellate jurisdiction to the review of final judgments of lower courts. Under R.C. 2505.02(B)(2), an order is final and appealable if it "affects a substantial right made in a special proceeding." Thus, in order to be deemed final, the order must affect a substantial right and it must have been made in a special proceeding. "Actions in juvenile court that are brought pursuant to statute to temporarily or permanently terminate parental rights are special proceedings, as such actions were not known at common law." *In re Adams*, 115 Ohio St.3d 86, 2007-Ohio-4840, ¶ 43, citing *In re Murray*, 52 Ohio

St.3d 155, 161 (1990) (Douglas, J., concurring in syllabus and judgment.) Accordingly, the order was made in a special proceeding.

{¶10} In addition, the trial court's order must affect a substantial right in order to be immediately appealable under R.C. 2505.02(B)(2). R.C. 2505.02(A)(1) defines "substantial right" as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." The Ohio Supreme Court has recognized that "parental custody of a child is an important legal right protected by law and, thus, comes within the purview of a 'substantial right' for purposes of applying R.C. 2505.02." *Murray* at 157.

{¶11} Furthermore, an order which affects a substantial right is one which, "if not immediately appealable, would foreclose appropriate relief in the future." *See Southside Community Dev. Corp. v. Levin,* 116 Ohio St.3d 1209, 2007-Ohio-6665, ¶ 7. If Father's motion is not granted, there is no assurance that the original adjudication would ever be reviewable. *See In re Adams* at ¶ 44; *Murray* at 158. Moreover, the agency is not obligated to seek permanent custody and might seek to resolve this matter in other ways, including returning the child to a parent or granting custody to a relative. Under R.C. 2151.414(A), an adjudication of abuse, neglect, or dependency and the grant of temporary custody to an agency "shall not be affected by a denial of the motion for permanent custody." *Id.* Thus, absent review at this point, if the agency fails to seek or is denied permanent custody, Father is without an effective remedy to challenge the initial juvenile proceedings which resulted in the adjudication of abuse and dependency and in the loss of custody. The adjudication significantly affects the parent's constitutional rights and even a temporary disposition could potentially keep the child out of a parental home for up to two years. *See In re J.G.*, 9th Dist. Wayne No. 12CA0037, 2013-Ohio-

417, ¶ 40. Consequently, the decision is a final and appealable order, and this Court possesses jurisdiction to hear the appeal.

{¶12} In his first assignment of error, Father asserts that the trial court lacked personal jurisdiction to proceed because of defective service. Inter alia, he claims that the inclusion of only the child's initials in the posted notice failed to provide realistic notice and failed to meet the standards of due process. For that reason, he contends that the trial court proceedings were rendered void. CSB, on the other hand, contends that the use of the child's initials was sufficient in that it is consistent with the practice of providing some degree of privacy to children in cases involving abuse, neglect, and dependency. As this case presents a challenge to the trial court's jurisdiction, it presents a question of law and will be reviewed by this Court de novo. *Lorain Cty. Treasurer v. Schultz,* 9th Dist. Lorain No. 08CA009487, 2009-Ohio-1828, ¶ 10.

{¶13} It has long been the rule in Ohio that a parent is entitled to notice of adjudicatory proceedings regarding their children. *See In re Corey*, 145 Ohio St. 413, 417 (1945). This is so because such complaints may lead to adversarial proceedings that can deprive parents of all rights in their children. *See In re Ware*, 8th Dist. Cuyahoga No. 40983, 1980 WL 130733, *2 (July 17, 1980), citing *In re Miller*, 61 Ohio St.2d 184, 190 (1980). In recognition of the constitutional protection afforded to parents' fundamental interest in the care, custody, and management of their children, these requirements have been incorporated into the statutes and rules governing juvenile adjudications and dispositions as a matter of due process of law. *In re Grant*, 10th Dist. Franklin No. 00AP-431, 2001 WL 102254, *4 (Feb. 8, 2001), citing *Santosky v. Kramer*, 455 U.S. 745 (1982).

{¶14} Due process requires both notice and an opportunity to be heard. *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, ¶ 13. Parents are parties to custody

proceedings and must, therefore, be served. Loc.R. 6.02 of the Court of Common Pleas of Summit County, Juvenile Division; Juv.R. 2(Y). A court must secure personal jurisdiction over the parties in order to render a valid personal judgment. *Maryhew v. Yova*, 11 Ohio St.3d 154, 156 (1984). Otherwise, the judgment of the trial court is void. *In re S.S.*, 9th Dist. Wayne 10CA0010, 2010-Ohio-6374, ¶ 43. Because Ohio courts have the inherent authority to vacate a void judgment, "a common law motion to vacate is the appropriate means by which to challenge a judgment that is void." *In re R.P.,* 9th Dist. Summit No. 26271, 2012-Ohio-4799, ¶ 19.

{¶15} In this case, service was attempted by posting. Neither party disputes the means of service, and we, therefore, do not address the appropriateness of posting as the means of service here either. Instead, the parties address the adequacy of the notice. Accordingly, the focus of our inquiry is the fact that the notice included only the initials of the child, Z.H., and his date of birth by way of identification of the newborn child to the apparently unsuspecting father. Father contends that this information alone is insufficient to give reasonable notice and asserts that, under Juv.R. 16(A) and due process, the names of other parties should have been included. Since the father was unknown at that point and the agency is implicit in such a custody action, that leaves the name of Mother as the arguably missing party. For its part, CSB contends that the inclusion of the child's initials is all that is required by Juv.R. 16(A) and, further, that initials are sufficient because they are consistent with the Superintendence Rules regarding the use of a juvenile's initials in case documents in an abuse, dependency, or neglect action. *See* Sup.R. 45(D)(1); Sup.R. 44(H).

{¶16} Ohio courts have generally found that the Rules of Superintendence do not, absent specific mandate, create substantive rights in individuals or procedural law. *See, e.g., In re K.G.*, 9th Dist. Wayne No. 10C0016, 2010-Ohio-4399, ¶ 11. Further, the Rules of Superintendence

"do not have the same legal standing" as the rules of practice and procedure, which must be presented to the legislature and have the effect of law. *See State v. Smith*, 47 Ohio App.2d 317, 328 (8th Dist.1976) (Krenzler, C.J., concurring). Additionally, there is no evidence in the record that CSB attempted to invoke and follow the procedures of Sup.R. 45(D) in this case although, "[t]he responsibility for omitting personal identifiers from a case document * * * filed with a clerk of court * * * shall rest solely with the party." Sup.R. 45(D)(3). To the contrary, CSB previously indicated in its Brief in Opposition to Father's Motion to Dismiss that the agency had included the child's full name on the papers it filed for posting. Apparently, the child's name was later redacted to his initials by an unidentified person.

{¶17} The worthy goal of seeking some degree of privacy for children in abuse, neglect, and dependency proceedings by using initials in published decisions and press releases, the captions of filed documents, or "case documents" is recognized through Juv.R. 5, Loc.R. 4.01(B) of the Court of Common Pleas of Summit County, Juvenile Division, and Sup.R. 45(D). It is nevertheless also true that neither the Rules of Juvenile Procedure nor the Rules of Superintendence may infringe upon the constitutional requirements of due process. *See State v. Speer*, 124 Ohio St.3d 564, 2010-Ohio-649, ¶ 99 (recognizing that the Rules of Superintendence are subject to a party's due process rights). We believe, therefore, that the matter before us must be resolved upon the question of whether the use of the child's initials and date of birth in the posting document satisfies the requirements of due process of law.

{¶18} Decades ago, the United States Supreme Court enunciated the standard for determining whether service of process comports with due process when it wrote: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise

interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co,*. 339 U.S. 306, 314 (1950). "The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315. More recently, the Ohio Supreme Court reiterated the same standard in *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, ¶ 13. Thus, the question becomes whether the use of the child's initials and date of birth were reasonably calculated to apprise the father that the pending custodial action involved his child.

{¶19} This Court first determines that the use of the child's initials does not comport with the requirements of Juv.R. 16(A) to include "the name of the first party on each side" in a posting document. "Initials" are not the same as a "name," particularly in the context of providing notice. Further, it is not reasonable to believe that a father would recognize the initials of a child he had never met or perhaps even knew to exist. This Court concludes, therefore, that the use of the initials of this infant was insufficient to accomplish notice reasonably calculated, under these circumstances, to actually inform interested parties of the pendency of this action.

{¶20} In this case, even the full name of the child would not have provided the desired notice to the father since the child's last name was taken from his maternal grandfather and is different from that of Mother. The inclusion of Mother's full name, however, is more likely to be recognized and to provide notice of the proceedings. The failure to include the name of Mother in this case is significant and represents a failure to provide "notice, reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action." It is the name most likely to provide notice to the father. In fact, when the CSB caseworker visited Father in jail, she used Mother's name to inquire whether he might be the father of the child. Father recognized her name and, upon that basis, became involved in the case.

**{¶21}** This Court concludes that the use of the initials of a child along with the failure to include Mother's name was insufficient to provide due process notice of pending litigation regarding the custody of that child to an unsuspecting Father. Father's first assignment of error is sustained.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN PROCEEDING TO THE DISPOSITIONAL HEARING IMMEDIATELY AFTER THE ADJUDICATORY HEARING WITHOUT HAVING ALL PARTIES PROPERLY SERVED WITH ALL THE DOCUMENTS REQUIRED FOR THE DISPOSITIONAL HEARING AND WITHOUT OBTAINING THE CONSENT OF ALL PARTIES.

**{¶22}** Having found merit in the first assignment of error, the second assignment of error is rendered moot. App.R. 12(A)(1)(c). Accordingly, we decline to address it.

### III.

**{¶23}** Father's first assignment of error is sustained. We decline to address the second assignment of error as it has been rendered moot. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and the cause is remanded for further proceedings in accordance with this opinion.

Judgment reversed,
and cause remanded.

—

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

MOORE, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.