[Cite as *In re L.F.*, 2014-Ohio-3800.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: L.F.

C.A. Nos. 27218
27228

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. DN 12-10-0656

DECISION AND JOURNAL ENTRY

Dated: September 3, 2014

BELFANCE, Presiding Judge.

{¶1} Appellants, George F. ("Father") and Jennifer S. ("Mother"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated their minor child dependent and placed him in the temporary custody of Summit County Children Services Board ("CSB"). Because Father was denied his due process right to have the adjudication and disposition of the minor child conducted within a meaningful time and in a meaningful manner, this Court reverses and remands.

I.

{¶2} Mother and Father are the natural parents of L.F., born August 31, 2012. CSB made contact with Mother shortly after the birth of L.F. because it had been involved with her several years earlier after the sudden death of another infant child, who was fathered by another man. Although the death of L.F.'s older half-sibling was ultimately ruled accidental, CSB was concerned that Mother continued to suffer from depression afterward.

{¶3}    After CSB became involved with Mother and L.F., it learned that Father, who resided with Mother, was a Tier III registered sex offender. In 2009, prior to his relationship with Mother, Father was convicted of sexual battery against his then step-daughter and was sentenced to a two-year period of incarceration. After he was released from prison, Father was subject to post-release control by the Ohio Adult Parole Authority ("APA"), which included restrictions on his interaction with minor children. Consequently, CSB worked with the APA and the parents to develop a voluntary safety plan for L.F., which required that the maternal grandmother live with the parents and supervise their interaction with L.F.

{¶4}    On October 6, 2012, however, the grandmother got into a verbal altercation with the parents and threatened to move elsewhere with L.F. The police responded to the altercation and removed L.F. from the home pursuant to Juv.R. 6. On October 9, CSB filed a complaint, alleging that L.F. was a dependent child under R.C. 2151.04(C) and/or (D), but it later dismissed its allegations under R.C. 2151.04(D). The complaint alleged drug abuse by both parents and that Father posed a risk to L.F. because he was a sex offender. Because this case focused primarily on Father's potential risk to L.F. as a convicted sex offender, this Court will confine its review to that aspect of the case.

{¶5}    On November 5, 2012, CSB filed a proposed case plan and requested that the trial court journalize it and make it part of the dispositional order for the child. *See* R.C. 2151.412(E). The case plan set forth goals for the parents, including that Father complete another sex offender risk assessment ("supplemental assessment") and follow any treatment recommendations. Although the case plan had not yet been journalized by the trial court, Father voluntarily began the process of obtaining the supplemental assessment by meeting with mental health

professionals. CSB did not seek a court order that Father complete an assessment prior to the adjudicatory hearing. *See* Juv.R. 32(A)(3).

{¶6} Instead, the matter proceeded to an adjudicatory hearing before a magistrate at the end of November 2012. At that time, the only sex offender risk assessment of Father was the one prepared by the APA. Through the testimony of Father's parole officer, her supervisor, and the APA specialist who performed Father's sex offender risk assessment, CSB attempted to demonstrate that Father posed a significant risk of harm to L.F because he was a convicted sex offender.

{¶7} The primary focus of CSB's dependency case was whether Father's history as a sex offender posed a current risk of harm to his infant son. The evidence revealed that the victim of Father's 2009 conviction was his then 15-year-old step-daughter, who no longer lived within the vicinity of Father. Shortly after Father's release from prison in 2011, an APA sex offender specialist reviewed his record and performed a Static-99 risk assessment, which revealed that Father was at low risk of reoffending. Consequently, the APA did not require him to undergo any further evaluations, nor did it require him to participate in sex offender treatment.

{¶8} Father's parole officer explained that she was not concerned about Father committing a sexual offense against his infant son. The APA witnesses further explained that, after CSB became involved with Father, they supported the agency's recommendation that Father undergo a supplemental assessment and comply with any resulting treatment recommendations. Father's parole officer explained that she was not concerned that Father posed a threat to L.F. but that she agreed with CSB's recommendation for supervision to "cover [Father's] butt" because "any time a sex offender is around a kid," people tend to make

accusations about the offender harming the child. Consequently, the parole officer conditioned Father's contact with L.F. upon the recommendations of CSB.

{¶9} The three witnesses who testified about visiting the family home and observing the parents with L.F. expressed no concerns about the condition of the home or the parents' ability to provide suitable care for L.F. In fact, they testified that L.F. appeared fine and that the parents were meeting his basic needs.

{¶10} CSB rested its adjudicatory case after presenting the testimony of the APA witnesses and the caseworkers. Notably, CSB had not sought a court order under Juv.R. 32(A)(3) that Father undergo a supplemental assessment prior to the adjudicatory hearing, nor did it assert during the hearing that a supplemental assessment was relevant or necessary to the court's determination of whether L.F. was a dependent child under R.C. 2151.04(C).

{¶11} Shortly after the adjudicatory hearing, the magistrate issued a brief decision that CSB had failed to prove that L.F. was dependent under R.C. 2151.04(C), that the complaint should be dismissed, and that a more detailed decision would follow. That same day, CSB filed an objection to the magistrate's decision, disputing the magistrate's conclusion that it had failed to present clear and convincing evidence that L.F. was a dependent child.

{¶12} On December 20, 2012, the magistrate issued a more detailed decision, explaining that CSB had failed to demonstrate a lack of parental care or that L.F., an infant boy and Father's biological child, was at risk of harm because of Father's past sexual offense against a 15-year-old, unrelated female. Based on that finding, the magistrate decided that the complaint should be dismissed. *See* Juv.R. 29(F)(1); R.C. 2151.35(A)(1).

{¶13} That same day, the trial court adopted the magistrate's decision. By its terms, the trial court's judgment was stayed by CSB's timely-filed objection. *See* Juv.R. 40(D)(4)(e)(i).

The trial court later denied the parents' request for an interim order that would have allowed L.F. to return to their custody. Consequently, L.F. remained in the emergency temporary custody of CSB.

{¶14} For several reasons not clear from the record, the transcript of the adjudicatory hearing was not requested or prepared in a timely manner, postponing the resolution of the objection process by nearly four months. Moreover, after the transcript was filed, CSB supplemented its objection and, for the first time, asked the court to look beyond the evidence presented at the hearing and consider the supplemental assessment that Father had obtained more than five months earlier. It argued that the supplemental assessment should be considered because it was not available at the time of the adjudicatory hearing.

{¶15} In his brief in opposition to CSB's objection, Father argued that CSB failed to meet its burden at the adjudicatory hearing. Moreover, he argued that the parents were being deprived of their due process rights because the agency was not making reasonable reunification efforts but was instead dragging out the objection process. He emphasized that, although the magistrate had found that L.F. was not a dependent child more than seven months earlier, their infant child had continued to live in an emergency placement, outside his parents' custody, for most of his short life.

{¶16} On July 1, 2013, the trial court found that the supplemental assessment should be considered on adjudication because CSB could not have produced it in time for the adjudicatory hearing. *See* Juv.R. 40(D)(4)(d). The court remanded the matter to the magistrate and ordered that he hold a hearing to consider the supplemental assessment.

{¶17} During August 2013, the magistrate held a supplemental hearing for CSB to present that evidence. Later that month, the magistrate issued a decision that adjudicated L.F. a

dependent child pursuant to R.C. 2151.04(C). Following a dispositional hearing, the magistrate decided that L.F. should be placed in the temporary custody of CSB and that the case plan, as originally filed on November 5, 2012, and as amended on August 15, 2013, should be adopted.

**{¶18}** Both parents filed timely written objections to the magistrate's 2013 adjudicatory and dispositional decisions. On December 4, 2013, the trial court overruled the parents' objections and adopted the magistrate's decisions, adjudicating L.F. a dependent child, placing him in the temporary custody of CSB, and adopting the original and amended case plans.

**{¶19}** Mother and Father separately appealed and their appeals were later consolidated. Because Father's second assignment of error has persuaded this Court that he was denied his right to due process in the adjudicatory proceedings, we confine our review accordingly.

II.

> THE JUVENILE COURT COMMITTED REVERSIBLE ERROR WHEN IT VIOLATED FATHER'S RIGHTS TO DUE PROCESS BY ORDERING UNDER THE THEORY OF "NEWLY DISCOVERED EVIDENCE" THE CONSIDERATION OF PSYCHOLOGICAL REPORTS REQUESTED BY [CSB] MONTHS AFTER THE CHILD WAS REMOVED AND THE DEPENDENCY COMPLAINT WAS FILED.

**{¶20}** Father's second assignment of error is that he was denied his right to due process in the adjudication of his child. Specifically, he asserts that the trial court did not adjudicate his child within a reasonable time and that it improperly considered additional evidence during the objection process.

**{¶21}** This involuntary case began when CSB filed a complaint to allege that L.F. was a dependent child. *See* R.C. 2151.27 and 2151.04. The stated purpose of R.C. Chapter 2151 is to provide for the care and development of the child, separating him from his parents "only when necessary for the child's welfare or in the interests of public safety;" and to provide judicial

procedures in which the parties are assured of a fair hearing and of having their constitutional and other legal rights enforced. R.C. 2151.01(A) and (B).

{¶22} Because parents are entitled to due process during the adjudicatory stage of the proceedings, specific procedural protections are set forth in R.C. Chapter 2151 and the Rules of Juvenile Procedure. *See In re Z.H.*, 9th Dist. Summit No. 26844, 2013-Ohio-3904, ¶ 13-14. These due process considerations are reflected in the expedited nature of the adjudicatory proceedings set forth in R.C. Chapter 2151 and the Rules of Juvenile Procedure. Because the due process problems in this case arose during the Juv.R. 40(D)(3) objection process, we will address the objection process separately from the initial adjudicatory decision.

### Initial Adjudicatory Hearing and Decision

{¶23} In this case, in the initial 2012 proceedings, the magistrate substantially complied with the requirements of Juv.R. 29(A), R.C. 2151.28(A)(2)(b), and R.C. 2151.35(E) that the adjudicatory hearing be held no later than 60 days after the complaint was filed because he completed that hearing just beyond the 60-day deadline. After determining that CSB had failed to prove that L.F. was a dependent child, the magistrate decided that the complaint should be dismissed. *See* Juv.R. 29(F)(1); R.C. 2151.35(A)(1).

{¶24} The trial court adopted the magistrate's decision that same day. Because it entered judgment during the 14-day period for filing objections to the magistrate's decision under Juv.R. 40(D)(3)(b)(i), however, and CSB had already objected to the magistrate's earlier, brief decision, those objections operated "as an automatic stay of execution of the judgment until the court disposes of those objections[.]" Juv.R. 40(D)(4)(e)(i).

**Objection Process**

**{¶25}** An objection process will necessarily involve a certain period of time for the court reporter to prepare the transcript, the parties to develop arguments for or against the objections, and the trial court to rule on the objections. We agree with Father, however, that he was deprived of his due process right to have these objections resolved within a meaningful time and in a meaningful manner under the unique facts of this case. We begin by emphasizing that, during the initial objection process, L.F.'s removal from his parents' custody was still at the pre-adjudication stage of these proceedings, because the trial court had not definitely decided whether he was a dependent child. In fact, the magistrate had found, and the trial court had tentatively agreed, that L.F. was not dependent and that the complaint should be dismissed.

**{¶26}** Although the parents had agreed at the October 2012 shelter care hearing to allow CSB to remove L.F. from their custody on an "emergency basis," that removal was "directed toward the prompt resolution of emergency custody issues" and focused on "the immediate safety and protection of [the child]." *In re Careuthers*, 9th Dist. Summit No. 20272, 2001 WL 458681, * 2 (May 21, 2001). That emergency placement was explicitly intended to be "limited in scope and purpose, and temporary in duration. It respond[ed] to an emergency—the immediate physical needs of the child—until the court [could] fully inquire into the facts and decide what [was] best for the child." *In re Moloney*, 24 Ohio St.3d 22, 25 (1986).

**{¶27}** Because the parents were deprived of their right to custody of their infant child throughout the objection process, they had a fundamental right to a fair and expeditious resolution of the adjudication. *See In re Flemming*, 8th Dist. Cuyahoga No. 63911, 1993 WL 277186, *7 (July 22, 1993). To safeguard these significant rights of the parties, the Rules of Juvenile Procedure and local rules of the juvenile court set forth requirements to ensure that

objections to the adjudicatory decision are resolved in a fair and timely manner.  Of relevance here, the transcript of the hearing was not prepared in a timely manner.  More significantly, the objection process was further delayed and Father was deprived of his right to a fair and expeditious adjudicatory hearing because CSB persuaded the trial court to consider Father's supplemental assessment under circumstances where it could have with reasonable diligence presented that information during the initial adjudicatory hearing before the magistrate in 2012.  See Juv. R. 32;  Juv.R. 40(D)(4)(d).

Filing of the Transcript

{¶28}  Because CSB filed an objection to the magistrate's factual finding that Father did not pose a threat to L.F. as a sex offender, it was required to support its objection with a transcript of the hearing.  Juv.R. 40(D)(3)(b)(iii) requires that "[a]n objection to a factual finding * * * be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding[.]"  Although Juv.R. 40 does not set forth a time for filing the praecipe, nor do the local rules, given the 14-day frame for filing objections under Juv.R. 40(D)(3)(b) and the requirement that the objection to a factual finding be supported by a transcript, it is only reasonable to assume that the praecipe should be filed within the 14-day objection period.  Moreover, because CSB's objection was to a magistrate's adjudicatory decision to dismiss the complaint in a dependency case, Loc.R. 3.03(G) of the Court of Common Pleas of Summit County, Juvenile Division, requires the court reporter to "prepare and provide copies of the transcript to the party requesting the transcript within fourteen days of the filing of the praecipe."  The 14-day time period may be extended by the trial court only "[f]or good cause shown[.]  Loc.R. 3.03(G).  Consequently, absent leave of court to extend these two 14-day time periods, a transcript of the magistrate's adjudicatory decision should be filed within 28 days of the magistrate's decision.

**{¶29}** Without any explanation on the record, however, CSB did not file its praecipe with the court reporter until March 13, 2013, 69 days after the expiration of the 14-day objection period. Moreover, a further unexplained delay occurred during the court reporter's preparation of the transcript. Although the record includes no motion for an extension, nor did the trial court grant an extension of time for the court reporter to prepare and file the transcript, the transcript was not filed until May 14, 2014, 48 days beyond the 14-day period prescribed by the local rule. Consequently, the transcript that should have been filed approximately one month after the magistrate's decision was not filed in support of the objections until almost five months after the magistrate's decision.

Father's Supplemental Assessment

**{¶30}** After the transcript was filed, CSB supplemented its objections and argued for the first time that, in addition to the evidence admitted at the initial adjudicatory hearing, the trial court should consider Father's supplemental assessment. This set in motion further improper delay in reaching the ultimate adjudicatory decision.

**{¶31}** CSB asked the court to consider the supplemental assessment under Juv.R. 40(D)(4)(d), which provides that, before ruling on the objections, "the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate." The trial court found merit in CSB's argument, concluding that it was required to consider the supplemental assessment because CSB demonstrated that it could not have produced that evidence for the initial adjudicatory hearing. Its decision was also premised upon CSB suggesting that the assessment was part of an existing case plan. Consequently, it remanded the matter to the magistrate to consider the supplemental assessment.

**{¶32}** The consideration of the supplemental assessment during the objection process failed to comply with the Rules of Juvenile Procedure for several reasons. To begin with, the record fails to demonstrate that CSB used reasonable diligence to get the supplemental assessment before the magistrate. *See* Juv.R. 40(D)(4)(d). As explained below, CSB could have invoked the procedure under Juv.R. 32(A)(3) to procure an order for a mental health assessment to be presented at the initial adjudicatory hearing. By the second day of the adjudicatory hearing, Father had completed all of his required sessions with mental health professionals and the only step remaining in the objection process was the psychologist's written report, which was completed two weeks later. CSB did not request a continuance of the adjudicatory hearing, nor did it even suggest to the magistrate that the supplemental assessment was relevant or necessary to the adjudicatory decision.

**{¶33}** More significantly, CSB sought belated admission of a supplemental assessment under the premise that the assessment itself had been properly authorized as a requirement of Father's case plan. However, although CSB had included that requirement in its *proposed* case plan, that case plan had no binding effect on Father because it had not been journalized by the trial court. *See* R.C. 2151.412(F)(1); R.C. 2151.412(E). The agency had no authority to require Father to submit to the supplemental assessment. *See In re S.D-M.*, 9th Dist. Summit Nos. 27148, 27149, 2014-Ohio-1501, ¶ 26.

**{¶34}** We do not dispute that the supplemental assessment was relevant to the trial court's determination of whether, given his history as a sex offender, Father posed a current risk to his infant son. We agree that the trial court "should not be forced to experiment with the health and safety of a newborn baby where the state can show by clear and convincing evidence, that placing the child in such an environment would be threatening to the health and safety of

that child." (Internal quotations and citation omitted.) *In re T.P.-M.*, 9th Dist. Summit No. 24199, 2008–Ohio–6437, ¶ 17. Nevertheless, the Rules of Juvenile Procedure provide a specific procedure for obtaining a court-ordered assessment prior to the adjudicatory hearing, which would have protected the interest of the child and the parents' due process right to have their child adjudicated within a meaningful time and in a meaningful manner.

{¶35} Juv.R. 32(A), titled "Social history and physical or mental examination: availability before adjudication[,]" provides that "[t]he court may order and utilize a social history or physical or mental examination at any time after the filing of a complaint" if "a material allegation of a neglect, dependency, or abused child complaint relates to matters that a history or examination may clarify[.]" Juv.R. 32(A)(3). Juv.R. 32(B) further provides that "[u]ntil there has been an * * * adjudication that the child who is the subject of the proceedings is * * * dependent, * * * no social history, physical examination or mental examination shall be ordered except as authorized under subdivision (A)[.]" Thus, prior to the December 2012 adjudicatory proceedings, the magistrate had the authority to issue an order for such an examination, had CSB made such a request. Juv.R. 40(D)(2)(a)(iii)(L).

{¶36} Had CSB followed the procedure set forth in Juv.R. 32(A)(3), and the trial court had agreed to order such an assessment, that evidence would have been submitted at the original adjudicatory hearing, months before it was eventually considered, thus ensuring the right to have the adjudication in a timely manner. The Juv.R. 32 procedure also would have protected the parents' rights to have this issue determined by the court in a meaningful manner. For example, Father would have had the opportunity to litigate whether a supplemental assessment was needed, given that CSB already had an evaluation performed by the specialist from the APA, and

whether he had the right to obtain his own, independent evaluation. *See In re Stanley*, 10th District Franklin No. 93AP-972, 1993 WL 512502, *3 (Dec. 7, 1993).

{¶37} Moreover, compliance with Juv.R. 32(A) would have resulted in a court-ordered assessment that would have been admissible at the adjudicatory hearing. Because Father voluntarily obtained the supplemental assessment, his communications with the psychologist(s) who prepared the assessment were privileged and inadmissible at the adjudicatory hearing. R.C. 4732.19 provides that "[t]he confidential relations and communications between a licensed psychologist * * * and client are placed upon the same basis as those between physician and patient under [R.C. 2317.02(B)]." Through those two statutory provisions, a psychologist "shall not testify" about communications with his client pertaining to treatment or diagnosis "except as otherwise provided" under one of the enumerated exceptions set forth in R.C. 2317.02(B), none of which apply here. The only exception of potential relevance here is R.C. 2317.02(B)(1)(b), which provides that the testimonial privilege does not apply:

> In any civil action concerning *court-ordered* treatment or services received by a patient, if the *court-ordered* treatment or services were ordered as part of a case plan journalized under section 2151.412 of the Revised Code or the *court-ordered* treatment or services are necessary or relevant to dependency, neglect, or abuse or temporary or permanent custody proceedings under Chapter 2151. of the Revised Code.

(Emphasis added.) *See also In re Jones*, 99 Ohio St.3d 203, 2003-Ohio-3182, paragraphs one and two of the syllabus (reading similar language into the "communication[]" language of a prior version of R.C. 2317.02, focusing on the admissibility of a "forensic" evaluation, i.e, one that had been ordered by the court to assist it in making findings of fact or conclusions of law).

{¶38} As explained already, the trial court had not ordered Father to undergo the supplemental assessment. Because the court had not yet journalized a case plan and CSB failed to obtain a court-ordered assessment under Juv.R. 32(A)(3), the supplemental assessment

voluntarily obtained by Father was not admissible at the adjudicatory hearing, absent any suggestion in the record that Father gave express consent that the testimony be admitted at the hearing. *See* R.C. 2317.02(B)(1)(a)(i); *In re Whiteman*, 6th Dist. Williams No. 92WM000009, 1993 WL 241729, *6 (June 30, 1993) (construing Juv.R. 32 without reference to the privilege statute). Therefore, L.F. was adjudicated a dependent child based on evidence that was not properly before the trial court.

{¶39} As noted above, included among the procedural protections of the parties' due process rights in R.C. Chapter 2151 and the Rules of Juvenile Procedure are specific time frames within which each step of the adjudicatory process should take place. The intent of enacting time constraints in parental rights cases is to ensure an "expeditious resolution" of the matter, given the significant rights at issue in these proceedings, "specifically, parental rights, the emotional and physical well-being of children, and the need * * * to stabilize the child's environment[.]" *In re Galloway*, 77 Ohio App.3d 61, 71-72 (6th Dist.1991). This Court has emphasized that parents are entitled to due process during the adjudicatory stage of the proceedings. *See, e.g*, *In re Z.H.*, 2013-Ohio-3904, at ¶ 13-14. "A fundamental requirement of due process is 'the opportunity to be heard' * * * at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965), quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). In light of the unique circumstances of this case, we conclude that the adjudication of L.F. deprived Father of his statutory and constitutional due process rights to have the matter resolved within a meaningful time and in a meaningful manner. Father's second assignment of error is sustained.

## Remaining Assignments of Error

**{¶40}** Because Father was deprived his right to due process during the adjudicatory stage of the proceedings, this Court must reverse the adjudication and subsequent disposition of L.F. Therefore, all other assignments of error have been rendered moot by this Court's disposition of Father's second assignment of error. Consequently, we need not reach the merits of Mother's assignments of error or Father's remaining assignments of error. App.R. 12(A)(1)(c).

## III.

**{¶41}** Father's second assignment of error is sustained. This Court did not address the merits of Mother's assignments of error or Father's remaining assignments of error because they were rendered moot by the disposition of Father's second assignment of error. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and remanded.

Judgment reversed
and cause remanded

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

EVE V. BELFANCE
FOR THE COURT

CARR, J.
WHITMORE, J.
CONCUR.

APPEARANCES:

JAMES W. ARMSTRONG, Attorney at Law, for Appellant.

DEREK CEK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.

SARAH NOVIK, Guardian ad Litem.